Peter Bryan SBABO and Lawrence S. COCKEREL *v.* STATE of Arkansas

CR 78-96                                    572 S.W. 2d 585

Opinion delivered November 6, 1978
(Division II)

498

affirmed as to Sbabo, reversed as to Cockerel.

*John W. Achor*, Public Defender, and *Henry N. Means, III*, for appellants.

*Bill Clinton*, Atty. Gen., by: *Joyce Williams Warren*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Peter Bryan Sbabo and Lawrence S. Cockerel appeal separately from the judgment in their joint trial, sentencing each of them to a term of four years upon a jury verdict on a charge of battery in the first degree. Both argue that an incriminating statement by Sbabo

should have been excluded from evidence as involuntary, and that the trial court erred in refusing to give jury instructions on the lesser included offenses of battery in the second degree and battery in the third degree. Cockerel also contends that the trial judge improperly commented on the evidence. We find no merit in Sbabo's contentions and affirm the judgment against him. We find merit in Cockerel's contention that the evidence justified the giving of his requested instruction on battery in the second degree and reverse the judgment against him.

The evidence reveals a bizarre, purposeless shooting of Patrick Pinson, who was wounded by a bullet from a .22 caliber rifle while he was playing golf alone on the fairway at Western Hills Country Club. Sbabo and Cockerel were later arrested. Sbabo gave a statement to Detectives Keel and Reed of the Little Rock Police Department, after Sbabo's arrest by Keel on the day of the shooting.

Sbabo relies almost entirely upon his contention that, when all the surrounding circumstances are considered, he was justified in feeling that he had been promised leniency in return for telling everything that had happened. There is no evidence, except that of Sbabo as later set out, that would even tend to show that his statement was involuntary. In considering this question in this case, we must determine whether the trial judge's finding was clearly against the preponderance of the evidence. See *Degler v. State,* 257 Ark. 388, 517 S.W. 2d 515.

Sbabo was 15 years of age. His mother was not present when the statement was given. He was advised of his rights and signed a statement waiving his rights to counsel and to remain silent. He said that he made the incriminating statement because the officers told him that he would be charged in juvenile court if he agreed to tell them everything that happened. He said that this statement was made by the officer questioning him, but he could not be sure which one it was. When confronted by the two officers, he said that he believed it was "the little one." He then said that he was not sure which one had made the statement, but he believed that it was the one who arrested him, and indicated Keel. Sbabo's mother said that, after the statement was made, "the tall

one" (she had been told this one was Reed) told her that Sbabo would be charged as a juvenile, unless the man died, in which case, he would be charged with murder.

Keel testified that he had told Sbabo that he was charged with first degree battery and wrote, at the bottom of the form on which Sbabo waived his rights, the statement, "If the man dies, I understand that I will be charged with murder." Keel said that Sbabo signed his name "behind" that statement. Both officers flatly denied that either had told Sbabo that he would see that Sbabo was charged in juvenile court if he made a statement. It was admitted by both that Keel told Sbabo that he would be charged in juvenile court because of his age, but neither could remember whether this happened before or after the statement was made. The officers testified that Reed recorded Sbabo's statement as Sbabo related it to him.

Keel testified he placed charges against Sbabo in juvenile court. He said that it was normal procedure to take "15-year-olds" to the juvenile hall, and for the prosecuting attorney to decide whether they should be charged on the criminal docket. Keel did not explain this procedure while advising Sbabo of his rights.

In this case, the critical question is so dependent upon a determination of the relative credibility of witnesses that we must defer to the superior position of the trial judge. *Whitmore v. State*, 263 Ark. 419, 565 S.W. 2d 133. We cannot say that the court's finding was clearly against the preponderance of the evidence. We certainly cannot say that the statement was involuntary because the officers did not, in addition to advising Sbabo that any statement could be used against him in court, say specifically that it could be used in a prosecution for a felony that carried a sentence of from three to twenty years.

The trial court refused to give any instructions on the two lesser offenses because it felt that the evidence did not justify these instructions. We readily agree as to the offense of battery in the third degree, a Class A misdemeanor. The only portions of the statute which are in any way pertinent are Ark. Stat. Ann. § 41-1603 (a), (b) and (c) (Repl. 1977).

This crime, as defined by those subsections of the statute, is committed only if the victim suffers physical injury, as distinguished from serious physical injury, which is essential to battery in the first degree or battery in the second degree. Physical injury that creates a substantial risk of death is serious physical injury. Ark. Stat. Ann. § 41-115 (19) (Repl. 1977). The victim testified that, when he was struck, he slumped and heard some air escape. He said that he stopped the bleeding and walked as far as he could before he got dizzy and fell. He stated that he was taken to Baptist Medical Center, where he was placed in the intensive care unit. He remained in the hospital for one week. He said that one of his lungs had collapsed as a result of the gunshot wound. This evidence clearly indicated a substantial risk of death.

Although we think the evidence as to Sbabo did not justify the giving of the instruction as to battery in the second degree, as defined by Ark. Stat. Ann. § 41-1602 (Repl. 1977), we think that it should have been given as to Cockerel. Since the physical injury was serious, this statute would have been applicable in this case only if the injury was caused as a result of the accused's purpose to cause serious physical injury to another person, or if it was caused recklessly. According to Sbabo's statement, on the night before the shooting Cockerel had said that he would shoot a man the next day, and on the following morning Sbabo got his .22 rifle at Cockerel's request, and went with Cockerel to the woods near the back side of the golf course, where Cockerel loaded the rifle and shot a man playing golf about 50 yards away, after which both ran, with Sbabo picking up his rifle and hiding it in some bushes when he reached home.

There was no evidence to justify a finding that Sbabo acted with the purpose of causing physical injury (as distinguished from serious physical injury) to another person or that he acted in any manner except deliberately. His own statement would prevent such a finding. In addition, Dennis Flowers testified that he was with appellants just prior to the shooting and that Cockerel asked Sbabo to go get the rifle and that Sbabo did. Flowers said that as soon as Sbabo returned with the weapon, the appellants went into the woods and that he heard a gunshot about twenty minutes later, after which he saw a bunch of people standing around a

golfer and saw Bryan (Sbabo) and Larry (Cockerel) running. It must be noted that no instruction on battery in the second degree or battery in the third degree was requested on behalf of Sbabo. The fact that the trial judge had refused them as to Cockerel would not necessarily mean that he would have refused both as to Sbabo.

The court was not required to give an instruction with respect to an included offense unless there was a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. Ark. Stat. Ann. § 41-105 (3). See also, *Caton & Headley* v. *State,* 252 Ark. 420, 479 S.W. 2d 537. As we have indicated, there was no basis for giving this instruction as to Sbabo. On the other hand, Sbabo's statement cannot be considered as to Cockerel. When the statement was read during the trial, Cockerel was referred to as "another person" and his name was not used. Without this statement, a different situation is presented. Flowers testified that Bryan and Larry went into the woods after Bryan returned with the .22 rifle. No one testified that Cockerel had possession of the rifle when Pinson was wounded, or after the shooting. Flowers had heard Larry say, on the preceding day, that he was not fool enough to shoot a golfer.

Cockerel's statement to the officers was not as self-incriminating as that of Sbabo. Cockerel said that his companion had brought a .22 rifle before the two had gone into the woods together. According to Cockerel's statement, after the companion had loaded the rifle, he handed it to Cockerel, and Cockerel fired one shot and handed it back to the companion, who fired it, and a man then yelled and fell down; then, he fled on his motorcycle.

Cockerel requested instructions on battery in the second degree and battery in the third degree. The instruction on battery in the second degree should have been given. The jury might have found, under the evidence, that the state had not shown beyond a reasonable doubt that Cockerel had either caused serious physical injury, with the purpose of doing so, or caused an injury, acting with the purpose of seriously and permanently disfiguring another or of destroying, amputating, or permanently disabling a member or organ of another person's body, or that his conduct

manifested extreme indifference to the value of human life. Still, it could rationally find that Cockerel recklessly caused serious physical injury to Pinson by use of the weapon. As the word is used in § 41-1602 (d), it has the meaning set out in § 41-203 (3) (Repl. 1977), viz:

> (3) "Recklessly." A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

We do not agree that the trial court commented on the evidence in stating, during the trial, that Sbabo's objections to the introduction of his statement were renewed and that a hearing had already been held on it in chambers.

The judgment against Sbabo is affirmed, but that against Cockerel is reversed.

We agree. GEORGE ROSE SMITH, BYRD and HICKMAN, JJ.